**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-5028

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JONATHAN LEONARD DEAN,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Charlottesville. Norman K. Moon, District Judge. (3:06-cr-00011-nkm)

Submitted: June 13, 2007          Decided: July 17, 2007

Before MICHAEL and SHEDD, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

David L. Heilberg, DYGERT, WRIGHT, HOBBS & HEILBERG, P.L.C., Charlottesville, Virginia, for Appellant. John L. Brownlee, United States Attorney, William F. Gould, Assistant United States Attorney, Charlottesville, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

At approximately 11:30 p.m. on November 5, 2006, the Albemarle County Fire Department received a call that gasoline fumes were detected in an apartment building at 211 Whitewood Road in Charlottesville, Virginia. This apartment building is a three story, wood-framed building containing twelve individual units. Jonathan Dean was the tenant in apartment four, in the basement of 211 Whitewood Road.

Deputy Fire Marshall James Barber responded to the address around midnight on the morning of November 6, 2006. Barber was an investigator for the Albemarle County Fire Marshall's Office. Barber's training included instruction in the cause of fires and in incendiary devices and explosives. Upon arriving, Barber could smell gasoline fumes in the parking lot outside the building and in the common areas inside the building. In investigating the source of the fumes, Barber observed a window that was opened several inches and covered by a screen. Barber was able to look through the window and into Jonathan Dean's bedroom. As Barber stood outside and looked in the room, he observed a red plastic gasoline can with the lid off. Barber also observed a drop cord, a box of $CO_2$ cartridges, a box that appeared to have been scorched, and a lamp that was plugged in and turned on.

Barber then knocked on Dean's door. After receiving no response, Barber went to his truck and retrieved his camera.

Barber returned to Dean's door and knocked again. When he still received no answer, Barber unlocked Dean's door using a key provided by the apartment manager and entered Dean's apartment.

The front door of Dean's apartment led into a small hallway. Dean's kitchen was immediately to the right of the front door. As Barber looked into Dean's kitchen he observed three two-liter bottles modified with initiator wires, bottle caps modified with Shrader or tire pressure valves, propane tanks, batteries, and wires. Based on his training and experience, Barber knew that these objects could be used to create explosive devices. Barber photographed what he observed in the kitchen. He then proceeded to Dean's bedroom, photographed the gas can, and then removed it by taking it out the front door. Barber then left to secure a search warrant. Meanwhile, county police located Dean, handcuffed him, and detained him pending the search of his apartment. After being informed of his rights, Dean made statements that "they were just messing around" and that "he was not a terrorist."

After Barber secured a search warrant, Dean's apartment was searched for bomb making materials and a number of items were seized. The police later secured a second warrant to search computers found in Dean's apartment for information on manufacturing explosives. During this search for bomb making information, the police discovered evidence of child pornography on

Dean's computers. The police then secured a third warrant to search Dean's computers for child pornography.

Dean was ultimately charged in a four count indictment. Counts One and Two charged Dean with possession of a destructive device, in violation of 26 U.S.C. §§ 5845(a) and (f) (2000) and 5861(d) (2000); Count Three charged Dean with possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (2000) and 18 U.S.C.A. § 2252A(b)(2) (West 2000 and Supp. 2007); and Count Four was a forfeiture provision. After the district court denied Dean's motion to suppress the evidence seized from his apartment, Dean pled guilty to Counts One, Two, and Three pursuant to a plea agreement. Dean's agreement specifically preserved his right to appeal the district court's denial of his suppression motion. Dean timely noted his appeal. We now affirm.

"Searches and seizures inside a home without a warrant are presumptively unreasonable" unless an exception to the warrant requirement applies. See Payton v. New York, 445 U.S. 573, 583, 587 (1980). A warrantless search of a home may be justified when exigent circumstances, such as an emergency, necessitate the search. Mincey v. Arizona, 437 U.S. 385, 394 (1978). For a warrantless search to qualify under the emergency exception to the warrant requirement, the police must possess an objectively reasonable belief that an emergency existed that required immediate

entry to render assistance or prevent harm to persons or property within. <u>United States v. Moss</u>, 963 F.2d 673, 678 (4th Cir. 1992).

Here, the initial warrantless entry into Dean's apartment falls within the emergency exception to the warrant requirement. The Albemarle County Fire Department received a call sometime after 11:30 p.m. regarding gasoline fumes in a wood-framed, three story apartment building. Gas fumes were noticeable in the parking lot outside of the apartment building and in the common areas inside the building. Looking through a ground level window into Dean's apartment, Barber observed a red gas can with its top off. Based on his training and experience, Barber considered the gas can an imminent threat and knew that an explosion and flash fire were possible if the mixture of air and gas was right and a source of ignition was introduced.

After making his observations, Barber twice knocked on Dean's door, and after receiving no response, Barber entered Dean's apartment. Once inside, Barber observed in Dean's kitchen devices that could be used to make explosives. Barber photographed these materials but did not spend long looking at Dean's bomb making equipment. Barber was in Dean's apartment no more than two minutes. During these two minutes, Barber took less than twenty-four photographs and then removed the gas can.

Prior to entering Dean's apartment, Barber had an objectively reasonable belief that the gas fumes filling the

apartment building created an emergency and that immediate entry was necessary to prevent harm to other people in the apartment building. Moss, 963 F.2d at 678. Moreover, once inside, Barber did not engage "in a general voyage of discovery" but took no more than twenty-four photographs and then removed the imminent threat. Id. Accordingly, Barber's initial warrantless entry into Dean's apartment was justified by the emergency exception to the warrant requirement.

Once lawfully in Dean's apartment, Barber was not required to close his eyes to the materials he observed openly in Dean's kitchen and that his training and experience told him were potential bomb making materials. Barber then properly used his brief observations to secure a warrant authorizing a search of Dean's apartment for bomb making materials.

Similarly, while searching Dean's computer pursuant to the second warrant, the police discovered evidence of child pornography. This evidence was then used to secure the third warrant to search Dean's computer for child pornography. Because the initial search of Dean's apartment occurred pursuant to a valid, recognized exception to the warrant requirement, Dean's statements made after being detained and his child pornography were not fruit of the poisonous tree. See United States v. Banks, 482 F.3d 733, 738 (4th Cir. 2007). Therefore, the district court did not err in denying Dean's motion to suppress. Accordingly, we

affirm the judgment of the district court.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED